298 So.2d 115 (1974)
BATON ROUGE SASH & DOOR COMPANY, INC.
v.
M. A. SAALE.
No. 9867.
Court of Appeal of Louisiana, First Circuit.
June 28, 1974.
Rehearing Denied August 13, 1974.
Curtis K. Stafford, Baton Rouge, for defendant-appellant Saale.
Robert J. Vandaworker, Baton Rouge, for third party defendant-appellant Brunson.
Warren L. Mengis, Baton Rouge, for appellee.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Plaintiff (Materialman) brought this action against defendant, M. A. Saale (Contractor) to recover $1,430.95 due on a written contract to furnish millwork to Contractor for a residence constructed for J. F. Brunson (Owner). The amount claimed represents six per cent sales tax on the contract price of $17,300.00, or $1,038.00; *116 $172.00 unpaid on the aforesaid contract price, and $120.95 on items not included in the agreement. Contractor denied liability for the sales tax on the ground that this item was assumed by Materialman. Contractor third partied Owner asserting a cost plus contract between them wherein Owner assumed responsibility for the amounts in dispute. Owner defended on the grounds that Materialman assumed the sales tax, and that the contract between Owner and Contractor was not on a cost plus basis but for a fixed price of $83,600.89.
Contractor has appealed from a judgment in favor of Materialman in the sum of $1,310.00. Owner has appealed from judgment in favor of Contractor on the latter's third party demand. Materialman has not appealed rejection of its claim for $120.95 as extras.
Owner desired to construct a new home in Oak Hills Place, Baton Rouge, Louisiana. He acquired from Materialman's President, J. A. Comeaux, an estimate of the cost of millwork (doors, windows, trim, etc.) called for by Owner's plans and specifications. Comeaux, an acquaintance of Owner, gave Owner a figure of $17,000.00. When Owner called for bids on the residence, the proposals exceeded Owner's estimated total cost by a considerable amount. Owner rejected all bids and sought some other means of construction. On Comeaux's recommendation, Owner contacted Contractor. Negotiations between Owner and Contractor led to the signing of an undated contract. The agreement provides simply that Contractor agreed to construct a residence, as per plans approved by Contractor and Owner, for the sum of $83,600.89, payable monthly as per earned estimates furnished by Contractor. The agreement further provides for a retained 10% of each estimate, payable upon Contractor furnishing proof of payment for all material and labor used or employed in the work.
The bids rejected by Owner were predicated on Comeaux's proposal to furnish the millwork for $17,000.00. On March 10, 1972, Owner and Contractor met with Comeaux to discuss a price for the millwork predicated on Contractor's constructing the house. The record does not disclose whether this meeting occurred before or after the signing of the contract between Owner and Contractor. Prior to the meeting, Comeaux prepared a contract on a printed form used by his company. The agreement obligates Materialman to furnish all millwork, including, inter alia, "1. All wood doors", for the sum of $17,000.00. The agreement specifically excludes nine enumerated items including "Sales tax". After discussion between the parties, the agreement was altered by writing which added the words "redi-hung" after "All wood doors", and changed the first zero in the contract price to a "3", making the price $17,300.00 instead of $17,000.00. As altered, the document was signed by Comeaux, on behalf of his company, and by Contractor.
Between Materialman and Contractor the principal dispute is whether materialman agreed to absorb the 6% sales tax due on the material furnished. Between Contractor and Owner the main contention is whether the contract to build the residence is for a fixed sum of $83,600.89, or whether the agreement is on a cost plus basis under which Owner is liable to Contractor for the sales tax. As may be expected, Owner joins Contractor in contending that Materialman agreed to assume the sales tax involved.
Comeaux's testimony is that he initially gave Owner an estimate of the millwork in the sum of $17,000.00. This figure did not include sales tax. In anticipation of the March 10, 1972 meeting, he prepared the written agreement to furnish the millwork for the sum of $17,000.00. Discussion at the meeting led to several changes, including the provision of redi-hung doors. The discussion also involved the matter of sales tax since the prepared agreement expressly provided for addition of the tax to the contract price. Comeaux made it clear *117 that the tax would be added. He noted, however, that some saving might be made during construction should Owner elect to use less costly material or eliminate some item or items of millwork. He indicated that any savings so effected would be credited to the total contract price. Following the discussion, Contractor signed the agreement which provides that sales tax would be added to the stated price.
At the end of each month, Comeaux billed Contractor for the items of millwork furnished during the period. Although the statements itemized the millwork supplied, they did not include sales tax. The amount billed was merely the cost of the material. The first four statements of $1,600.00, $1,700.00, $8,500.00 and $5,000 totaled $16,800.00. The fifth and final statement was for $1,538.00, representing the balance of $500.00 due on the contract price and $1,038.00 sales tax on the total material furnished. Contractor was given credit for $17,028.00 paid on the account.
Comeaux explained that the monthly statements did not include sales tax since this was a "contract job", as distinguished from an ordinary "over the counter sale". He conceded that on over the counter purchases, sales tax was added on each item, as evidenced by invoices for over the counter purchases of extras by Contractor. Comeaux also testified it was customary on a contract job to exclude sales tax from his estimates and to bill the customer for sales tax when the job was completed. He also stated he followed this procedure in this instance.
Contractor testified his agreement with Owner was on a cost plus five per cent of material and labor basis, despite the undated contract calling for a price of $83,600.89.
Contractor testified the true agreement between him and Owner was that Contractor would be paid the cost of the work, plus five per cent of all labor and material as a commission. This, according to Contractor, included sales tax on the amount charged for millwork. He explained that the monthly invoices were presented to Owner when received. Owner then gave Contractor a check to cover the cost thereof. Contractor then paid the Materialman. Contractor was of the opinion that the monthly statements included sales tax. Contractor concedes discussion of the question of sales tax before the March 10, 1972 contract was signed with Materialman. Saale also testified he signed the contract for millwork only after Comeaux gave assurance that Comeaux would assume the tax.
Owner conceded that notwithstanding the undated contract for $83,600.89, it was understood with Contractor that the total cost would approximate $90,000.00. The reason for the anticipated overage was that some items of construction were not firmed up as to price. These included extra cost for masonry work, painting and more expensive changes made in plumbing fixtures. Owner noted, however, that the cost of millwork was a firm item. Owner stated that when the discussion of sales tax arose, it was agreed that Comeaux would assume that item. He further stated that after the agreement on sales tax was reached, Comeaux handed the contract to Owner to sign, but Owner declined saying he was not the contractor. According to Owner, Contractor then signed the millwork agreement.
The record reflects confusion regarding the alleged obligation of Materialman to furnish colored, leaded glass sidelights to the main entrance of the residence. Owner contends Materialman furnished only ordinary glass which was removed and replaced with colored glass obtained by Owner. Before the invoices for the glass arrived, Owner deducted $250.00 from the amount due Materialman on the assumption it would defray the cost of the colored glass. It developed, however, that the colored glass cost $440.00. In the alternative, Owner claimed credit of $190.00, representing the difference between the $250.00 deducted and the actual cost of the glass. *118 The Materialman contended he furnished the glass called for.
Relying primarily upon the written agreement between Materialman and Contractor, the trial court awarded Materialman judgment for the $1,038.00 sales tax claimed. The trial court also awarded Materialman the sum of $272.00, representing unpaid invoice billings pursuant to the millwork agreement. The sum of $120.95 claimed by Materialman for unpaid over the counter purchases was denied below because of a set-off found to be due Contractor. Materialman concedes this amount was properly denied. In reaching the above conclusions, the trial court obviously rejected Owner's claim for credit in the amount of $190.00 allegedly due by virtue of the purchase of colored glass.
We find the trial court properly held Contractor for the sales tax on the millwork. It is settled law that where verbal negotiations are incorporated in a written agreement, the contract evidences the total understanding of the parties. In such circumstances, neither party may rely upon prior discussion or understanding to change the terms of the document. LSA-C.C. art. 2276; Piliawsky v. Colar, La. App., 112 So.2d 730. This rule is peculiarly applicable here. In this case, the parties made certain changes in the written millwork contract. Had they intended to change the document concerning liability for sales tax, it must be presumed such a change would have been made along with the others noted.
The trial court found the agreement between Owner and Contractor to be neither a contract for a fixed price nor a contract on a cost plus basis; but rather a hybrid of both. The lower court concluded the building contract was for a base price of $83,600.89, predicated on Contractor having received firm bids for certain construction items. The trial court also found that Owner agreed to pay the cost of all items for which Contractor did not have firm prices. This was a purely factual determination in which we find no manifest error.
Contractor attempted to prove it customary in the construction industry that bids for millwork include sales taxes in the quoted prices. The sole proof offered was the uncorroborated testimony of Contractor himself. In rebuttal, Comeaux denied the existence of such a custom. We think it obvious that Contractor's testimony standing alone is insufficient to establish a custom.
The judgment of the trial court is affirmed; all costs of these proceedings to be paid by third party defendant, J. F. Brunson.
Affirmed.