COLE, Judge.
Plaintiff-appellee, Layne-Louisiana Division of the Singer Company (hereinafter *1223 referred to as “Layne”), brought suit against Green Acres Sewerage and Water Corporation (hereinafter referred to as “Green Acres”), the defendant-appellant, to recover the sum of $42,000.00 allegedly due under a contract to drill a water well. Green Acres appeals the judgment of the trial court in favor of Layne and against Green Acres for $42,000.00. We affirm.
On May 9, 1974, after prior negotiations, Olin Lacy, sales representative for Layne, presented to Robert L. Edwards, President of Green Acres, a proposal by Layne to construct and equip a water well approximately 1,800 feet deep. The proposal by Layne was accepted and signed by Edwards on behalf of Green Acres on the same date. The well was drilled and water produced. However, Green Acres refused to pay the price as provided in the written contract, thereby causing Layne to initiate this suit.
The essential complaint of Green Acres which led to its refusal to pay concerns the chemical content of the water. Specifically, the water produced contains a relatively high iron content. In defense of Layne’s suit for the price of the well, Green Acres raises basically two defenses, both of which relate to the chemical content of the water produced. First, Green Acres alleges that Layne failed to perform under the contract, either by violating a verbal agreement to guarantee the chemical content of the water, by failing to drill deeper than 1,971 feet in an effort to secure better water, or by improperly setting the screen in the well. Secondly, Green Acres alleges that error as to the primary cause of the contract vitiates the consent to the contract under Louisiana Civil Code Article 1819, et seq.
NON-PERFORMANCE
The written contract entered into between the parties, with regard to chemical content, provides:
“ * * * The well to be constructed under this proposal will be made in accordance with all applicable requirements of the Louisiana Department of Health, but we make no guarantee as to chemical quality. Our Health Board guarantee is on the basis of a bacterialogical [sic] analysis only.” (Emphasis supplied)
The above-quoted provision is clear and unambiguous and has the effect of law on the parties. La.-C.C. art. 1945. Any extrinsic evidence of a verbal guarantee as to chemical content which would vary the terms of the written contract is inadmissible. La.-C.C. art. 2276; Baton Rouge Sash & Door Company, Inc. v. Saale, 298 So.2d 115, 118 (La.App. 1st Cir. 1974).
The trial court, “out of an abundance of caution,” considered parol evidence of a verbal guarantee by Layne of the chemical quality of the water, over Layne’s objection. However, after considering such evidence, the trial court still concluded:
“ * * * A careful scrutiny of the testimony of all of the witnesses still leads to the conclusion that the above quoted paragraph contains the clear understanding and intent of the parties thereto.”
In this regard we note that at Edwards’ request, changes were made in other provisions in the letter proposal presented before he accepted and signed it. Had Edwards intended to change the contract with regard to the provision on the chemical content, it must be presumed that such a change would have been made along with the others noted. See Baton Rouge Sash & Door Company, Inc. v. Saale, supra.
Additionally, the appellant apparently contends that Layne failed to perform under the contract, because it did not drill deeper than 2,000 feet in order to obtain better water. The contract provided, however, only that a 1,800 foot well would be constructed, with a provision that would have allowed the well to be drilled deeper with an additional cost adjustment. In fact, Layne drilled to 1,971 feet. While the contract did not require Layne to drill deeper than 1,800 feet upon Green Acres’ request, it is clear from the record, to the contrary, that Edwards was insistent about not going below 2,000 feet because of concern about any adverse effect on the water pressure.
*1224 The appellant also urges that Layne failed to perform under the contract because Green Acres did not consent to the water screen being set at the level where it was placed. With regard to the placing of the screen, the contract provided:
“ * * * Prior to installing the casing and screen, we [Layne] will run an electric log to insure that the screen is set opposite the best part of the water bearing formation.”
This provision did not require the approval of Green Acres in setting the screen but, in effect, required that on the basis of an electric log the screen be set in the best part of the water-bearing formation. The expert testimony presented indicates that an electric log was taken down to 1,971 feet. The log indicated that the best and only reliable water-bearing sands were located at a depth of 1,495 to 1,620 feet. An 80-foot screen was set with its top at 1,508 feet. The expert testimony indicates clearly that the placement of the screen is well within the water-bearing formation and has no effect on the chemical quality of the water.
ERROR OR MISTAKE
Green Acres additionally asserts that error or mistake as to the principal motive of the contract (i. e., to obtain iron-free water) voids the contract. Under Louisiana Code of Civil Procedure Article 1005, error or mistake constitutes an affirmative defense which must be specifically pled. In this case Green Acres did not specifically plead the defense of error or mistake in its answer.
Therefore, for the foregoing reasons, the judgment of the trial court is affirmed. The costs of these proceedings are assessed to the appellant.
AFFIRMED.