417 So.2d 1265 (1982)
Ross CAMPESI
v.
MARGARET PLANTATION, a Partnership, et al.
No. 14948.
Court of Appeal of Louisiana, First Circuit.
June 29, 1982.
Rehearing Denied August 24, 1982.
*1266 Ashton L. Stewart, Stewart & Preis, Baton Rouge, for plaintiff, appellee.
Mack E. Barham, M. Lizabeth Talbott, Barham & Churchill, New Orleans, for defendants, appellants.
Before LEAR, CARTER and LANIER, JJ.
LANIER, Judge.
This is a suit on a written agricultural lease instituted by the lessee, Ross Campesi, against the lessor, Margaret Plantation, a partnership, composed of Frank Carruth, III, and the Margaret Best Trust, for the value of the plant and stubble sugar cane owned by him which was left on the leased premises after the 1975 crop was harvested. The lessor reconvened and sought various credits and counterclaims. The trial court rendered judgment in favor of Campesi on the main demand for $228,580.30, and rendered judgment on the reconventional demand in favor of Margaret Plantation for $41,670.79. Margaret Plantation appealed suspensively.

I. FACTS
Commencing with the 1969 crop year (March 1, 1969 to February 28, 1970), Margaret Plantation orally leased through Frank Carruth, III, various agricultural lands in West Baton Rouge Parish to Ross Campesi for the purpose of raising sugar cane and soybeans. Effective March 1, 1969, Margaret Plantation also sold various pieces of farm equipment (valued at $60,000.00) and the plant cane and first and second year cane stubble (valued at $60,000.00) to Campesi. For tax purposes all operations were continued in the name of Margaret Plantation with Margaret Plantation reporting the income and losses of the operations in its partnership tax returns. Campesi did not include such income and expenses on his tax returns and paid rental to Margaret Plantation of 1/5 of the crops produced. The title to the growing crops and the farm equipment was transferred to Campesi in 1973. Commencing with the 1974 crop year, the rental due under the verbal lease was reduced to 1/6.
Apparently, toward the end of the 1974 crop year or at the beginning of the 1975 crop year, a dispute arose between the parties to the lease.[1] Margaret Plantation filed a suit for a declaratory judgment against Campesi alleging that the relationship between the parties was that of employer-employee, and that Campesi was an overseer and not a tenant. Campesi resisted the suit claiming that a lessor-lessee relationship existed between the parties and asserting that he acquired the ownership of the farm equipment and the plant cane and first and second year stubble.
Because Margaret Plantation was claiming he was not a tenant, Campesi refused to advance the cost of or perform the fallow plowing and planting in 1975 for the 1976 crop. Margaret Plantation made written demand upon him to do so. Campesi yielded to this demand and thereafter submitted a demand to Margaret Plantation for $97,752.18 for the cost of the fallow plowing and planting and $66,114.36 for his ownership interest in the first and second year cane stubble, for a total of $163,866.54. The parties then entered into negotiations for the settlement of their disputes and for the harvesting of the 1976 crop. These negotiations culminated in a written agricultural lease[2] for the 1976 crop year, with each side reserving all rights and claims in the pending lawsuit. Campesi apparently completed the 1976 crop year and terminated his relationship with Margaret Plantation. On May 11, 1977, judgment was signed in favor of Campesi establishing the *1267 legal relationship between the parties as set out in the first paragraph under FACTS above. Apparently, no appeal was taken from this judgment and it became final.
Armed with this judgment, Campesi invoked the provisions of paragraph (c) of the written agreement which provides as follows:
"(c) In the event said final judgment in said suit decrees that Ross Campesi owns the rights/or claims to said stubble and plant cane as of December 31, 1975, then and only in such event, when Campesi determines the acreage containing such plant and stubble sugar cane he will so utilize, which will be not later than June 1, 1976, he shall give Margaret Plantation written notice of the number of acres of plant cane, first year stubble and second year stubble utilized by him, and Margaret Plantation shall then pay to Campesi an amount equal to the value thereof as of December 31, 1975 as fixed by said County Agent; such payment to be due five days after the said value thereof has been fixed by said County Agent, together with interest of 8% per annum thereon from January 1, 1976, until paid; no payment shall be required for any stubble or plant cane which is not utilized by Campesi."
(Emphasis Added).
Campesi advised Carruth that as of December 31, 1975, he utilized 364.3 acres of plant cane, 462.9 acres of first year stubble, and 370.6 acres of second year stubble. The County Agent for West Baton Rouge Parish, I. R. Creel, fixed the value as of December 31, 1975, of plant cane at $218.00 per acre, of first year stubble at $275.00 per acre, and of second year stubble at $59.00 per acre. Thus, the value of the plant cane was 364.3 × $218 or $79,417.40; the value of the first year stubble was 462.9 × $275 or $127,297.50; and the value of the second year stubble was 370.6 × $59 or $21,865.40, for a total value of $228,580.30. Campesi made demand on Margaret Plantation for this amount and it was rejected. This suit followed.

II. PROPER INTERPRETATION OF PARAGRAPH (c)
The appellants contend that the trial court's "judgment is contrary to law and evidence due to the trial court's failure to apply the general principles governing the law of contracts."
Agreements legally entered into have the effect of laws on those who have formed them. La.C.C. art. 1901. It is not the province of the courts to relieve a party of a bad bargain, no matter how harsh. Maloney v. Oak Builders, Inc., 256 La. 85, 235 So.2d 386 (La.1970); Louisiana Power & Light Co. v. Mecom, 357 So.2d 596 (La.App. 1st Cir. 1978). The courts are bound to give legal effect to all contracts according to the true intent of all the parties, and the intent is to be determined by the words of the contract when these are clear and explicit and lead to no absurd consequences. La. C.C. art. 1945.
In his very lucid reasons for judgment, the learned trial judge interpreted paragraphs (a), (b) and (c) as follows:
"Paragraphs (a) and (b) by their terms would become operative if Margaret Plantation were declared owner of the stubble and plant cane. Paragraph (c) was to become operative if Campesi were declared owner.
"An argument was made that paragraph (b) contained an error in that it was to become operative if Campesi was declared owner of the plant and stubble cane rather than if Margaret Plantation was so decreed. This would mean that paragraphs (b) and (c) would come into simultaneous operation rather than (a) and (b). An examination of these provisions however easily shows that (b) and (c) could not be intended to operate together, because under paragraph (c) Margaret Plantation would be required to pay for the plant and stubble cane the value thereof as of December 31, 1975, and under paragraph (b) Margaret Plantation would have had to pay again for at least some of the plant cane and stubble at a fixed value as of June 1, 1977. In effect Margaret Plantation would be paying twice for the same cane.

*1268 "In the opinion of the Court there is no apparent error in the contract.
"Read together these paragraphs provide that if Margaret Plantation was declared owner Campesi under (a) would pay Margaret Plantation in effect for Margaret's stubble and plant cane which he intended to use in the year 1976, and at the end of the year under (b) Margaret Plantation would repay him at the same rates (with certain exceptions pertaining to overages and shortages discussed hereinafter), when he returned to Margaret Plantation the possession of the land, for equal acreages of plant cane and stubble. On the other hand if Campesi were declared owner of the plant cane and stubble, Margaret was to pay him under (c) as of the outset, i.e. December 31, 1975.
"Considering the contention that the parties contemplated that the County Agent was only to determine acreage, the Court has concluded the contrary.
"The contract in paragraph (a) provides that Campesi was to determine the acreage he would utilize the first year and no payment was to be made for any stubble cane he did not utilize. No mention is made of determination or measurement of acreage by the County Agent. In paragraph (b) it is provided that Margaret Plantation was to determine the acreage it would utilize the following year and no payment was to be made for any stubble cane which Margaret Plantation did not utilize. This paragraph also provides that, in the event of differences in acreage as of the beginning of the first year as compared to the end, certain payments would be due from one to the other of the parties depending on whether the differences represented shortages or overages. The phrase used is `an amount equal to the value of such differences as fixed by the County Agent.' In paragraph (c), which became operable as explained above the references to the County Agent are as follows: `an amount equal to the value thereof as of December 31, 1975 as fixed by said County Agent; such payment to be due five days after the said value thereof has been fixed by said County Agent.' Nothing in these paragraphs suggests that the County Agent was to measure the acreage designated by the parties respectively at the beginning and end of 1976. (Margaret Plantation apparently does not contest Campesi's acreage figures. It is not clear what defendants would have the County Agent do if his function under the provisions of the applicable paragraph was to determine acreage.)"
* * * * * *
"The arbitrary $100-$50-$25 formula adopted in paragraphs (a) and (b) in the event the land owner was declared owner of the plant cane and stubble is a `wash-out' figure since one party would repay an identical sum to the other in the event acreages remained the same on redelivery...."
The language of paragraphs (a), (b) and (c) of the contract is clear, explicit, unambiguous and leads to no absurd consequences. The interpretation given by the trial judge to these contractual provisions is the only one that is rational and consistent considering the language in question, and in our opinion is imminently correct.

III. LACK OF COMMON INTENT OF PARTIES FOR PARAGRAPH (c)
Appellants contend that "The trial court's failure to consider the proffered evidence regarding the true intent of the parties has led to a result which is manifestly erroneous and contrary to law." In arguing this assignment of error, the appellants acknowledge that "The trial court never explicitly ruled on the admissibility of this testimony, although the judgment clearly indicates that the depositions were filed into the record. Appellants presumed that this evidence was not considered by the lower court, because the court indicated a belief that the contract was unambiguous, and because the judgment rendered is violative of the true intent of the parties as revealed by the excluded evidence." Appellants then observed that "If the lower court did consider the testimony adduced at the depositions, then appellants respectfully submit *1269 that the judgment rendered is contrary to the evidence and should be modified."
It is well settled that when the terms of a written contract are clear and unambiguous, the contract cannot be varied, explained or contradicted by parol evidence. In such cases, the meaning or intent of the parties to the contract must be sought within the four corners of the instrument. La.C.C. art. 2276; White v. Rimmer & Garrett, Inc., 340 So.2d 283 (La. 1976); Breaux v. May, 392 So.2d 1089 (La. App. 3rd Cir. 1980); Mathieu v. Nettles, 383 So.2d 1337 (La.App. 3rd Cir. 1980). However, even if the parol evidence is considered, and apparently it was by the trial judge, the appellants cannot prevail. Error or mistake as to the principal motive of a contract (lack of common intent) is a vice of consent and is an affirmative defense that must be specifically pleaded. La.C.C.P. art. 1005; Layne-Louisiana Division of Singer Company v. Green Acres Sewerage and Water Corporation, 347 So.2d 1222 (La.App. 1st Cir. 1977). The party alleging a vice of consent bears the burden of proving it. Talley v. Blake, 322 So.2d 877 (La.App. 1st Cir. 1975).
The evidence of record shows that on the date that the contract was executed, March 4, 1976, Frank Carruth, III, was in the law offices of Ashton L. Stewart, the attorney for Campesi. Stewart drafted the final version of paragraph (c) and gave it to Carruth. Carruth telephoned his attorney, Ben R. Miller, Jr., and read paragraph (c) to him. Miller required Stewart to attach an addendum dated March 4, 1976 to the lease agreement with additional terms. The third paragraph of this addendum provides as follows:
"It is my understanding that paragraph `C' on page 4 of the agreement will constitute a full settlement of the claim of Campesi for seed cane, labor, materials and profit for planting and fallow plowing in the fall of 1975 in the event said paragraph becomes effective."
At the bottom of the addendum in Carruth's handwriting, then appears the following:
"On the basis of the foregoing representations, I execute the attached agreements.
 "/s/ Frank Carruth, III"
This evidence shows that Carruth reviewed paragraph (c) individually and with his attorney prior to executing the contract. This evidence further demonstrates that it was Carruth's intention that paragraph (c), if it became effective, would be a full settlement of Campesi's claims for the value of the stubble and plant cane and for costs of the planting and fallow plowing for the 1976 crop. In commenting on the intention of the parties to paragraph (c), the trial judge observed that "The Court is satisfied that the parties knew that this method would be used by the County Agent." Under all of these circumstances, the trial judge was not clearly wrong in determining as a matter of fact that paragraph (c) reflected the true intent of the parties in the instant case. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).

IV. VALUE OF PLANT CANE AND STUBBLE
The appellants contend that the trial court committed error by interpreting the term value in paragraph (c) to mean the cost of placing the seed cane in the ground.[3]
In his excellent reasons for judgment, the trial judge observed as follows:
* * * * * *
"`Value as fixed by the County Agent' is a figure related to cost or investment and not to market value. It is the defendant's alternative contention that if the County Agent was expected to determine the value of the plant cane and stubble, he should have determined the market value.

*1270 "In considering this question it should be noted what specifically was being valued because it appears that some confusion arose in terminology used by counsel (and the Court) in questioning witnesses. Various times witnesses were asked questions as to the value of `crops' or `standing crops,' but at least two witnesses indicated there is a difference between standing crops and stubble or plant cane. (See testimony of Mr. Carville, transcript 176-177 and testimony of Dr. Wegenhoft, transcript 203-206.) Stubble and plant cane are what remains in the fields after harvest. They are the basis or (figuratively) the seed for the future crop. (In the sugar cane industry the term seed has a special meaning not equivalent to the botanical sense of the word or to our use in this (figurative sense.)

"Plant cane is newly planted cane which has never made a crop. First year stubble is the remains of sugar cane after harvest of the first year's crop. Second year stubble is the remains of sugar cane after it has yielded two crops. The confusion continues in defendant's brief on page 16 where the testimony of Mr. Carville is interpreted as a statement of the difference between cost and value. Actually Mr. Carville was making a distinction between the cost of stubble and the value of a standing crop. The entire testimony of this witness and others should be read.
"The defendants have cited a number of cases on the meaning of value and the method to be used in determining the value of crops. It is important to note that in one of the cases cited, to-wit: State, Department of Highways v. Black (La.App. 3d Cir. 1968) 207 So.2d 583, while the issue was whether or not compensation was due for a crop which defendant had been permitted to harvest and to retain sale proceeds therefrom (answered in the negative), the district court had allowed compensation as a separate item for the stubble, and this award was not contested. (It would have been interesting to see what method the district court had used in fixing the value of the stubble.)
"The contract in this case called for valuation as of the end of the year, i.e. after the crop was made and harvested, and before any cultivation was done to start the next year's crop.

"While normally the term value refers to market value, the evidence is clear that in evaluating stubble and plant cane the County Agent customarily uses average regional cost figures. The Court is satisfied that the parties knew that this method would be used by the County Agent. The County Agent indicated he knew of no other way to determine value of stubble and plant cane. Indeed the Court would be hard put to arrive at any other method. On May 24, 1976 Mr. Carville wrote a letter (D-5) unrelated to this case in which he suggested a valuation for growing crops would logically be based on income potential. Mr. Carville indicated, in a letter dated June 7, 1976 (marked D-6) unrelated to the present case, that in order to evaluate stubble according to income potential it would be necessary for the parties to agree on certain historical average yield data as a future estimated yield and they would have to establish an acceptable future price. On November 24, 1975 he had parenthetically suggested in a letter (D-3) a difference between cost of stubble and value. Nevertheless on December 5, 1975 in a letter (Campesi # 3) addressed to all men agents in the sugar area he suggested value could be based on cost figures adjusted for stand, price and yield expectations. The value he thus proposed was based on future variables and estimates as he suggested in D-6 in which he warned of the hazards of such evaluation, which in fact amounted to speculation. It is virtually impossible to determine value of stubble and plant cane based on expected profit, since profits depend on many future variables, such as the effects of weather on yield, sucrose content and eventual price of the harvested crops through the three-year life span of the cane.

*1271 "Market value, of course, is not determined by figuring future profit, although such considerations motivate those who buy and sell, but market value depends on the existence of a market or trade in the type of property to be appraised. An attempt was made to show that some sales had occurred, but in actual fact there is no market for stubble and plant cane separate from leasehold rights. The evidence indicates that in some cases leases provide agreed arbitrary figures in the eventuality of termination of the lease. The examples of sales given by defendants were isolated family transactions and could in no way be considered comparable sales.
"It is also virtually impossible to determine value of stubble and plant cane based on expected profits, since profits depend on numerous future variables, such as the effects of weather on yield, sucrose content, and eventual price of harvested sugar cane at the mill. The fact that sugar prices dropped in 1975 would not reduce the value of stubble and plant cane in December 1975 unless one had the means of predicting the price of sugar at the end of the crop year in 1976. The contract was entered into March 4, 1976 at the beginning of the crop year.
"In the opinion of the Court the parties, having provided that the County Agent should fix the values, are bound by the valuations made by him according to regular procedures of his office. Moreover, defendants have not shown that the County Agent's valuations would be unreasonable under the circumstances. Stubble and plant cane have no value except as an investment with hope or expectation of future profit depending on the uncertainties of the future. While it is not the function of the Court to delve into motivations of the parties in entering into such a contract, it does not appear, given the implications of the May 11, 1977 judgment concerning the ownership of the stubble and plant cane and the investment that went into them, that it would have been unreasonable for the parties to agree that Campesi should be paid or reimbursed for that investment on a cost-based value."
(Emphasis Added).
The testimony of Floyd Carville, Farm Management Specialist with the Louisiana State University Cooperative Extension Service, and Dr. Kenneth N. Wegenhoft, Farm Management Specialist with the Louisiana State University Cooperative Extension Service, support the trial judge's conclusion that the method and procedure used by the County Agent of West Baton Rouge Parish, I. R. Creel, was the proper method of determining the value of the plant cane and stubble pursuant to paragraph (c) of the lease agreement. The trial judge did not commit error in this holding. Arceneaux v. Domingue, supra.

V. CONCLUSION
For the foregoing reasons, the judgment of the trial court is correct and it is affirmed at the appellants' costs.
AFFIRMED.

APPENDIX NO. 1

* * * * * *
"And, under said reservation, the parties agree:
"(a) During the term of this agreement, it is contemplated that Campesi will utilize and produce that plant and certain stubble sugar cane left in the ground, the rights and/or claims of said plant and stubble are, as of December 31, 1975, at issue in said suit, or reserved above. In the event final judgment in suit decrees that Margaret Plantation owns the rights and/or claims to said stubble and plant cane, then and only in such event, when Campesi determines the acreage containing such plant and stubble sugar cane that he will so utilize, which shall be not later than June 1, 1976, Campesi shall then give to Margaret Plantation written notice of the number of acres of plant and first year stubble, and the number of acres of second year stubble, and simultaneously therewith shall pay to Margaret Plantation the sum of $100.00 per acre for plant cane, $50.00 per acre for first *1272 year stubble, and $25.00 per acre for second year stubble; together with interest at 8% per annum from January 1, 1976 until date paid; no payment shall be required for any stubble cane which is not utilized by Campesi.
"(b) On the expiration of the term of this agreement, it is contemplated that Margaret Plantation will utilize and produce the plant and stubble sugar cane left in the ground by Campesi; and in the event said final judgment in said suit decrees that Margaret Plantation owns the rights/or claims to said stubble and plant cane, then and only in such event, when Margaret Plantation determines the acreage containing such plant and stubble sugar cane it will so utilize, which will be not later than June 1, 1977, Margaret Plantation then shall give to Campesi written notice of the number of acres of plant cane, first year stubble and the number of acres of second year stubble, and simultaneously therewith shall pay to Campesi the sum of $100.00 per acre for plant cane, $50.00 per acre for first year stubble and $25.00 per acre for second year stubble, together with interest at 8% per annum from January 1, 1977 until paid, provided that in the event the acreage in plant cane, and/or first year stubble and/or second year stubble shall be less, as of June 1, 1977 than the amount thereof as of June 1, 1976, Campesi shall pay to Margaret Plantation an amount equal to the value of such differences as fixed by the County Agent for the Parish of West Baton Rouge, and in the event the acreage in plant cane and/or first year stubble and/or second year stubble shall be greater as of June 1, 1977 than the amount thereof as of June 1, 1976, Margaret Plantation shall pay Campesi an additional amount equal to the value of such difference as fixed by the said County Agent; no payment shall be required for any stubble cane which is not utilized by Margaret Plantation.
"(c) In the event said final judgment in said suit decrees that Ross Campesi owns the rights/or claims to said stubble and plant cane as of December 31, 1975, then and only in such event, when Campesi determines the acreage containing such plant and stubble sugar cane he will so utilize, which will be not later than June 1, 1976, he shall give Margaret Plantation written notice of the number of acres of plant cane, first year stubble and second year stubble utilized by him, and Margaret Plantation shall then pay to Campesi an amount equal to the value thereof as of December 31, 1975 as fixed by said County Agent; such payment to be due five days after the said value thereof has been fixed by said County Agent, together with interest of 8% per annum thereon from January 1, 1976, until paid; no payment shall be required for any stubble or plant cane which is not utilized by Campesi,..."
NOTES
[1] In 1974 the average price of sugar was 40.52¢ per pound. In 1973 it was 13.81¢ per pound and in 1975, 15.32¢ per pound.
[2] The pertinent provisions of this lease are attached to this opinion as Appendix No. 1.
[3] Sugar cane is a unique crop because it can be harvested annually for three years from one planting.