YELVERTON, Judge.
This is a dispute over a sale of inventory between two offshore catering services. When the plaintiff, Foods & Services, Inc. lost its contract to service a certain rig, the defendant, SHRM Catering Services, Inc., which got the contract, offered to buy all of Foods & Services’ inventory on the rig. A joint inventory was taken and the goods were valued at $11,977.93. The defendant forwarded payment of only $8,432.98, having “discounted” certain items. The plaintiff sued for the balance, plus attorney’s fees based on open account pursuant to La.R.S. 9:2781. The trial judge gave judgment to the plaintiff as prayed for and *291 awarded attorney’s fees of $750. appealed. We affirm. SHRM
The issues presented are (1) the nature and the terms of the contract between the parties, and (2) whether Foods & Services was entitled to attorney’s fees under La. R.S. 9:2781.
Foods & Services, Inc. is a catering type service which provides food, pots, pans, linens, and janitorial supplies to offshore oil rigs. The company provided these services to Shell Rig Number 12 for approximately six years. When the company lost to another bidder and a new contract was awarded to SHRM Catering Services, SHRM offered to purchase Food & Services’ inventory and equipment already aboard the rig. The first contact between the parties was a telephone call made by John Hudelot, the operations manager for SHRM, to James Harrington, assistant to the President of Foods & Services. An agreement was reached. An inventory was taken by Thomas J. Harrison, the area supervisor for SHRM, and Alex Norse, an employee of Foods & Services.
The plaintiff sent the defendant an invoice for $11,977.93 based on this inventory but the defendant remitted the sum of only $8,432.98. Mr. Harrington (Foods & Services) phoned Mr. Hudelot (SHRM) to inquire about the unpaid balance, and Hude-lot explained that while he had paid most of the invoice at 100%, he had reduced, or discounted, the kitchen and dining equipment by 25% and the linens and bedding by 50%. Hudelot said that he relied on what he claimed was an industry practice to justify these reductions. After attempts to collect the $3,544.95 balance failed, Foods & Services filed this suit.
As the trial judge stated in his reasons for judgment, the parties do not question the inventoried cost price. They disagree only as to the allowance of a discount on used items. The trial judge found that the defendant failed to show that the sales price was subject to an alleged industry practice of discount allowances.
Appellee’s representative, Harrington, testified that he asked for the actual replacement cost of his items and that Hude-lot had no objection to this. The benefit to Mr. Hudelot was in saving the costs of transporting his own goods to the rig. According to Mr. Harrington “the only discussion we had was what it would cost me to replace these items and that’s what I would be paid for.”.
Hudelot could not remember whether the term “actual cost” or “actual value” was used in his discussion with Harrington, and he used the terms interchangeably throughout his testimony. He stated that the agreement was to buy the equipment at actual cost which in his opinion meant the value of the items when he bought them. He admitted that the discount was never discussed with Harrington, but indicated this kind of discount was implied in these agreements. Harrington denied that there was any custom or usage in the offshore catering business for such a discount.
The trial judge summarized his evaluation of the testimony as follows:
“Plaintiff’s testimony and that of its representative was that the sale price was fixed at ‘actual costs.’ Defendant’s witness, who negotiated the purchase, confirmed that the phrase used was ‘actual costs’ but that he intended it to be actual value, that is, costs less (industry) discount for any used supplies. Defendant testified that discounting this was standard procedure in the catering industry but offered no other evidence in support of such practice. Defendant also testified it could have purchased for actual costs new equipment and supplies instead of used items. On the other hand, the readiness and actual good condition of supplies on hand and in place was the rebuttal by plaintiff in justification of the sales price based on actual costs.
“It is noted that sales inventory lists prepared by representatives of both parties and signed by defendant’s representative did not reflect any discount or reservations concerning sales’ price.
“Plaintiff and defendant do not question the inventoried costs price but dis *292 agree as to allowance of any discount on used items.
“In the absence of evidence to show that the sales price of actual costs was subject to an alleged industry practice of discount allowances, the Court concludes that judgment should be and is rendered in favor of plaintiff as prayed for.”
In order for a contract of sale to exist, three circumstances must concur: the thing sold, the price and the consent. La. C.C. art. 2439. SHRM contends that there was no meeting of the minds in this case as to the price. We think there was. Like the trial judge, we think the parties agreed on a price of $11,977.93, as indicated by their conduct both before and after the formation of their contract. SHRM virtually admitted as much by paying a substantial part of the invoice without question, and failing to remit the balance only because of its claim to be entitled to a discount. It was not the price that SHRM questioned, but rather it was whether it was entitled to a discount off that price as to some of the goods purchased. We regard this as a contract of sale.
The defendant’s claim for a discount was based, not on the contract, for it readily admitted there had never been any mention of a discount in their oral agreement, but on its contention that that was the custom or usage when such sales were made in the offshore catering industry.
Before a custom or usage can be applied to help interpret a contract, the usage must be established, and the existence of such usage is a question of fact. See New Roads Oil Mill & Mfg. Co. v. Kline, Wilson & Co., 154 F. 296 (5th Cir.1907); see also La.C.C. arts. 2053 and 2054 and comments thereunder. The proof of a custom or usage offered in this case consisted of the testimony of Hudelot and a former employee. This was disputed by Harrington, who testified he had never heard of such discounts in offshore catering circles. From this conflicting testimony, the trial judge reasonably concluded that discounting as a custom or usage had not been proved. We find no manifest error in this conclusion. Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Since SHRM failed to prove that the $11,-977.93 price agreed upon was subject to any usage reduction or discount for depreciation, the trial judge correctly gave judgment to the plaintiff for the disputed amount.
The appellant also assigns as error the award of attorney’s fees pursuant to La.R.S. 9:2781. The record shows that the plaintiff made a written demand for payment by certified mail and that this demand was received by the defendant, along with copies of the invoice and the inventory sheet. Thus, there was full compliance with the requirements of the statute. No payment was received in response to the demand. Appellant complains, however, that the transaction between the parties was not an “open account.”
La.R.S. 9:2781(C) defines an open account as follows:
“C. For the purposes of this Section and Code of Civil Procedure Articles 1702 and 4916, ‘open account’ includes any account for which a part or all of the balance is past due, whether or not the account reflects one or more transactions and whether or not at the time of contracting the parties expected future transactions. ‘Open account’ shall include debts incurred for professional services, including, but not limited to, legal and medical services.”
Under the plain language of the statute, we can find no reason for excluding the present transaction. See Iberoamericano Advertising v. Schweikert, 464 So.2d 899 (La.App. 4th Cir.1985).
Foods & Services’ request for more attorney’s fees in defending this appeal cannot be considered because it did not appeal or answer the appeal as required by La.C.C.P. art. 2133; Luna v. Atchafalaya Realty, Inc., 325 So.2d 835 (La.App. 1st Cir.1976).
*293 For the foregoing reasons, the judgment of the trial court is therefore affirmed. Appellant will pay the costs of this appeal.
AFFIRMED.