**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

**No. 00-30179**

---

**CECIL MCKENZIE,**

**Plaintiff-Appellee,**

**VERSUS**

**HARRY LEE, Etc; ET AL.,**

**Defendants,**

**HARRY LEE, Sheriff, individually and in his capacity as**
**Sheriff of the Jefferson Parish Sheriff's Office,**

**Defendant-Appellant**

---

Appeal from the United States District Court
for the Eastern District of Louisiana

---

April 5, 2001

Before JONES and DeMOSS, Circuit Judges, and BARZILAY[*], Judge.

BARZILAY, Judge:

    Jefferson Parish Louisiana Sheriff Harry Lee ("Sheriff") appeals from the final judgment

[*]Judge, U.S. Court of International Trade, sitting by designation.

on jury verdict entered by the district court, Judge Edith Clement presiding. The district court granted judgment in favor of Cecil McKenzie ("McKenzie") on his claims against the Sheriff for employment discrimination. For the reasons discussed below, we REVERSE the judgment of the district court.

## I.     Background

The trial record reflects the following facts. Sheriff Lee fired McKenzie, a Caucasian deputy, on May 12, 1994 after ten years of service for allegedly using excessive force during the arrest of a young African-American car-jacking suspect. The facts giving rise to McKenzie's termination are as follows. In the pre-dawn hours of April 13, 1994, McKenzie and several other deputies responded to an alleged car-jacking incident wherein a woman was beaten and her car stolen. A high speed chase ensued and ended with the officers cornering the suspects. As two suspects exited their car, a shot was fired, hitting one suspect in the leg. The suspect tumbled to the ground after being hit. McKenzie ran up to the suspect as he lay on the ground, then struck the suspect with his flashlight, handcuffed him, and rolled him onto his back. McKenzie's supervisor saw McKenzie hit the suspect and ran over to the scene. McKenzie continued to shout at the suspect and his supervisor yelled at McKenzie to back off. She advised McKenzie that she would file a disciplinary report against him for his excessive behavior. Nonetheless, McKenzie was allowed to accompany the suspect in the ambulance.

The supervisor filed her report and recommended that McKenzie be suspended for two days. Two officers in the department chain of command approved of her recommendation. Faced with this recommendation as well as a recommendation by one officer following a criminal battery investigation that McKenzie should be terminated, Sheriff Lee chose to terminate

McKenzie for his use of "excessive force."  The Sheriff called a news conference to announce McKenzie's termination.

In April 1995, McKenzie filed suit against Sheriff Lee in federal district court, alleging unlawful employment discrimination based on race in violation of Louisiana Revised Statutes 23:1006 and 51:2232, 42 U.S.C. §§ 1981 and 1983, and the Fourteenth Amendment of the United States Constitution.[1]  The first trial ended in a mistrial based on abuse of peremptory challenges by McKenzie's counsel during jury selection.  The case was reassigned to Judge Clement and tried before a second jury, which could not reach a verdict. The third trial also took place before Judge Clement and resulted in the challenged verdict of $64,000 in damages plus prejudgment interest.

McKenzie claimed that the Sheriff wrongfully terminated him on account of his race in order to gain favor with minority constituents.  He alleged that the Sheriff's stated reason for terminating him was a pretext for race discrimination and complained that the Sheriff was responding to the political climate following the incident, which included pressure from African-American citizens regarding police brutality.  He claimed that the timing of his termination was suspect, as the Sheriff announced his candidacy for governor of Louisiana shortly afterward. McKenzie asserted that had he not been Caucasian, his supervisors' disciplinary recommendation for suspension would have been followed, and that he was fired only to show voters that Sheriff

_____

[1]Section 4 of Acts 1997,  No. 1409, § 1, repealed L.R.S. 23:1006-23:1008 and consolidated the employment discrimination provisions of law into one chapter.  The relevant provisions are now contained in L.R.S. 23:332.

3

Lee was willing to respond to their concerns about police brutality by white officers against African-Americans.

Sheriff Lee conceded that some African-American citizens had led an outcry against his office concerning a perceived lack of concern for the safety of African-Americans. The Sheriff argued, however, that he did not fire McKenzie specifically in response to concerns regarding brutality against African-American citizens. Moreover, even if the Sheriff had fired the deputy for that purpose, the termination did not amount to discrimination against McKenzie because he is white. Under the Sheriff's theory, he would have terminated abusers of African-Americans irrespective of the abusers' race.

Following the jury verdict finding in favor of the plaintiff, Sheriff Lee filed a motion to alter or amend the judgment pursuant to Rule 59(e), which the district court denied. The Sheriff timely appealed, claiming that there was insufficient evidence to support the jury's finding that he discriminated against McKenzie because of his race.

## II.     Discussion

### A.     *Standard of review*

The first issue to be resolved on appeal is the standard of review under which the panel will consider this appeal, which depends on whether the defendant moved for judgment as a matter of law pursuant to Fed. R. Civ. P. 50 at the trial in the district court. Rule 50 states in pertinent part:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may grant a motion for judgment as a

4

matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

(2) Motions for judgment as a matter of law may be made at any time before submission of the case to the jury. Such a motion shall specify the judgment sought and the law and the facts on which the moving party is entitled to the judgment.

The rule serves two purposes: (1) to permit the trial court to re-examine sufficiency of the evidence and (2) to notify opposing counsel of the insufficiency of his case. *See MacArthur v. University of Texas Health Center at Tyler*, 45 F.3d 890, 897 (5th Cir. 1995).

If the defendant properly moved for judgment as a matter of law at the conclusion of all evidence, the standard for evaluating the sufficiency of the evidence is whether the evidence, considered in the light most favorable to the verdict, has such quality and weight that reasonable and fair-minded persons could reach the same conclusion. *See Polanco v. City of Austin*, 78 F.3d 968, 974 (5th Cir. 1996). Where the purposes of Rule 50 are satisfied, failure to meet the technical requirements of Rule 50 will be excused. However, if a party fails to move for judgment as a matter of law at the close of all evidence or at any other time during the trial, the issue is treated as raised for the first time on appeal and is reviewed under the plain error standard. *See id.* Under the plain error standard of review, the court reviews only whether the plaintiff has presented any evidence in support of his claim; if there is any evidence to support the jury verdict, the appeal will be denied.

The Sheriff did not explicitly make a motion for judgment as a matter of law at the close of all evidence at trial. He argues, however, that by implication he reserved his right to do so, and thus complied with the "spirit" of the rule requiring that he so move to avoid plain error review. Some evidence exists that the trial court was aware of the fact that the Sheriff's counsel was

5

preserving his challenge to sufficiency at the close of the plaintiff's case. However, we need not decide whether the Sheriff preserved the issue of sufficiency to avoid plain error review, because a careful review of the trial record demonstrates that no evidence at all was presented to support the jury's finding that McKenzie was terminated on account of his race. Therefore, even under the plain error standard of review, the jury verdict must be overturned.

B.    *Insufficiency of evidence to support the jury verdict*

"The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was a victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143, 120 S.Ct. 2097, 2111, 147 L. Ed. 2d 105, 123 (2000). This Court has held that "[c]laims of racial discrimination brought under §1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444, 448 n. 2 (5th Cir. 1996) (citations omitted). The Supreme Court recently addressed the appropriate standards for evaluating employment discrimination claims in *Reeves.* As established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L. Ed. 2d 668, 677 (1973), the plaintiff must first establish a prima facie case of discrimination. The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Id.*, 411 U.S. at 802, 93 S.Ct. at 1824. Finally, if the employer gives a legitimate, non-discriminatory reason for the action, "the plaintiff must then prove, by a preponderance of the evidence, that the proffered reason was mere pretext for the discrimination." *Byers v. Dallas Morning News*, 209 F.3d 419, 425-26 (2000) (citations omitted).

Plaintiff is correct that he need not address whether a prima facie case has been made

6

before this Court, as the pertinent inquiry on appeal after a verdict is whether the plaintiff has proven discrimination, not whether a prima facie case has been made. *Shattuck v. Kinetic Concepts, Inc*., 49 F.3d 1106, 1110 (5th Cir. 1995). Under the plain error standard of review, the appellate court reviews only whether the plaintiff has "presented *any* evidence in support of his claim." *Polanco v. City of Austin, Texas,* 78 F.3d 968, 974 (5th Cir 1996) (emphasis added) (citations omitted). Hence, we review only whether McKenzie has presented any evidence showing that he received disparate treatment because of his race, and that the proffered nondiscriminatory reason for his treatment was a pretext for racial discrimination. McKenzie correctly notes that this court will adhere to its longstanding rule that reversal for plain error is an extreme remedy and will occur only to avoid a miscarriage of justice. *See Rizzo v. Childrens' World Learning Center, Inc.* 213 F.3d 209, 213 (5th Cir. 2000). We believe that in order to avoid such a miscarriage of justice, the jury verdict in this case must be reversed for plain error.

McKenzie offered several evidentiary points in support of his claims that he was terminated because he is white and that Sheriff Lee's stated reason for his termination, excessive force, was a pretext for race discrimination. First, McKenzie noted that Sheriff Lee, who had recently undertaken a gubernatorial campaign, was aware of two prior instances of brutality against young African-Americans, and was under pressure from African-American constituents to crack down on brutality against minorities. Second, McKenzie established that Sheriff Lee was aware of other officers who had participated in severe abuses of minority suspects and inmates, but who were given only short suspensions for their behavior. Additionally, McKenzie produced evidence that his three supervisors recommended that he receive a two-day suspension. His supervisor who was the reporting officer on the scene testified that she was surprised to discover

7

that McKenzie had been fired over the incident; another officer testified that McKenzie's conduct did not warrant termination.

With the evidence presented, McKenzie has clearly established that he was harshly punished for his behavior, and that he was punished more harshly than other officers who had used force at least as excessive as McKenzie had in his work as a deputy. What McKenzie has failed to produce is any evidence indicating that he was punished more harshly and that he received disparate treatment *because of his race*. There is no indication that the other officers who were disciplined less severely are non-Caucasians. Indeed, it is entirely possible that the comparable officers who engaged in more egregious behavior were also white, a fact which would preclude their use as comparables to show disparate treatment of similarly situated individuals who were not members of McKenzie's protected class. *See Williams v. Trader Publishing Co.*, 218 F.3d 481, 484 (5th Cir. 2000) ("To prove discrimination, a plaintiff may use circumstantial evidence that [s]he has been treated differently than similarly situated non-members of the protected class.") (citations omitted). While the punishment the other officers received supports a contention that the disciplinary action taken against McKenzie was more severe, it does not show that his punishment was more severe simply because he was white. Sheriff Lee even provided unrebutted testimony that he fired numerous black and white officers for disciplinary violations, including the use of excessive force. Likewise, the statements from his supervisors establish at most that McKenzie was punished harshly, but do nothing to support McKenzie's claim that he was punished more harshly because of his race. Plaintiff himself provides as support for his claim of racial discrimination that there were rumors in the sheriff's office that someone in the department needed to be "sacrificed" to appease the community's black citizenry. This statement

8

can only support the contention that McKenzie was punished because of the race of his victim, rather than his own Caucasian ethnicity.

McKenzie's burden was to establish that he was terminated on account of his race. *Byers*, 209 F.3d at 425-26. He cannot prevail by merely showing that he was punished severely, that he was punished more severely than other officers, or that he was punished because of the Sheriff's desire to gain favor in the black community. The Court does not deny that termination is a harsh punishment, and that McKenzie's evidence showed that it may not have been entirely warranted in these circumstances. However, unwarranted termination alone cannot support a claim of racial discrimination. *See id.* at 425 (noting that an employer's decision to terminate an employee violates the statute "when that decision was based on race, whether that race be white or black.") (citations omitted). While the race of the victim of McKenzie's brutality may have factored into the Sheriff's decision, it is the issue of whether McKenzie's race was a motivating factor that drives the determination of unlawful employment discrimination on account of race. *See Harrington v. Harris,* 118 F.3d 359, 367-68 (5th Cir. 1997) (holding that a plaintiff may establish pretext by showing that the employer was motivated by a discriminatory motive.) (citations omitted). With no evidence that he was terminated due to his race, and no evidence that the proffered nondiscriminatory reason for his termination was merely a pretext for racial discrimination, McKenzie's claim fails.

**III.     Conclusion**

Based upon the foregoing, we hold that the district court erred in finding sufficient evidence of racial discrimination.  The trial court's judgment based on the jury verdict is therefore REVERSED.