United States Court of Appeals
Fifth Circuit

**F I L E D**

**July 28, 2004**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-41216
Summary Calendar

_____

TERRY VAUGHN; YVETTE HOLMAN,

Plaintiffs - Appellees,

versus

SABINE COUNTY, ET AL.,

Defendants,

SABINE COUNTY,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Eastern District of Texas, Beaumont
District Court Cause No. 1:01-CV-914

_____

Before HIGGINBOTHAM, DAVIS and PRADO, Circuit Judges.[1]

EDWARD C. PRADO, Circuit Judge.

Appellees Terry Vaughn and Yvette Holman sued appellant
Sabine County for employment discrimination, under Title VII of
the Civil Rights Act of 1964, after not being rehired by
appellant Sabine County's newly-elected Sheriff. The plaintiff-
appellees alleged that they were not rehired as deputy sheriffs
because they are women. Ultimately, a jury agreed and awarded

_____

[1]Pursuant to 5TH CIRCUIT RULE 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIRCUIT
RULE 47.5.4.

1

Vaughn $61,000.00, and Holman $42,000.00, in front pay. The jury also awarded each plaintiff $100,000.00 in past and future mental anguish damages. The district court, however, reduced the awards for mental anguish damages to Title VII's statutory cap of $50,000.00.[2] The district court also awarded Vaughn $14,139.40, and Holman $14.689.40, in front pay; the district court awarded the plaintiffs $48,975.20 in attorney's fees and costs. Sabine County challenges these awards on appeal.

## Evidence of Pretext

At the conclusion of the plaintiffs' case, and again at the conclusion of the evidence, Sabine County moved for judgment as a matter of law. After the trial, Sabine County moved for a new trial. In each case, Sabine County argued that the verdict was against the great weight of the evidence. The district court denied each motion.

As its first issue, Sabine County challenges the district court's denial of its motions for judgment as a matter of law and for a new trial. Sabine County asserts that there was not enough evidence to present the case to the jury, and that a reasonable jury could not have rendered a verdict in favor of the plaintiffs from the evidence presented at trial.

We review the denial of Sabine County's motions for judgment

---

[2]See 42 U.S.C. § 1981a(b)(3).

2

as a matter of law de novo,[3] applying the same standard as the district court.[4] We review the denial of a motion for a new trial for abuse of discretion.[5] Because Sabine County did not introduce any new evidence relevant to a finding of discrimination between its last motion for judgment as a matter of law and its motion for a new trial, we need not consider Sabine County's argument about the motion for new trial if the rulings on the motions for judgment as a matter of law were proper.

Additionally, we forgo a discussion of the burden-shifting process that occurs during the trial of an employment discrimination case because the dispute has been fully adjudicated by the fact-finder. "When, as here, a case has been fully tried on its merits, we do not focus on the *McDonnell Douglas* burden-shifting scheme. Instead, we inquire whether the record contains sufficient evidence to support the jury's ultimate findings."[6]

---

[3]*See Deffenbaugh-Williams v. Wal-Mart Stores, Inc*., 188 F.3d 278, 285 (5th Cir. 1999).

[4]*See Aetna Cas. & Sur. Co. v. Pendleton Detectives of Miss., Inc.*, 182 F.3d 376, 377 (5th Cir. 1999).

[5]*Industrias Magromer Cueros y Pieles v. La. Bayou Furs Inc.*, 293 F.3d 912, 918 (5th Cir. 2002).

[6]*Rutherford v. Harris County*, 197 F.3d 173, 180-81 (5th Cir. 1999) (quoting *Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir. 1999)).

We need not parse the evidence into discrete segments corresponding to a prima facie case, an articulation of a legitimate, nondiscriminatory reason for the employer's decision, and a showing of pretext. "When a case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is unimportant."[7]

"If the defendant properly moved for judgment as a matter of law at the conclusion of all evidence . . ., the standard on appeal for evaluating the sufficiency of the evidence is whether the evidence, considered in the light most favorable to the verdict, has such quality and weight that reasonable and fair-minded persons could reach the same conclusion."[8]  The court should grant a motion for judgment as a matter of law when there is not a sufficient conflict in evidence to create a jury question.[9]  "A mere scintilla is insufficient to present a question for the jury."[10]

Sabine County maintains that it did not rehire the plaintiffs because they scored poorly in front of an interview board convened by the newly-elected Sheriff Maddox.  The plaintiffs, however, alleged that the interview board was merely a vehicle to legitimize illegal employment discrimination.  We

---

[7]*Id.* (quoting *Travis v. Bd. of Regents of Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997)).

[8]*McKenzie v. Lee*, 259 F.3d 372, 374 (5th Cir. 2001).

[9]*See Travis*, 122 F.3d at 263.

[10]*EEOC v. La. Office of Cmty. Servs.*, 47 F.3d 1438, 1443 (5th Cir. 1995).

4

will treat Sabine County's assertion that the plaintiffs were not the most qualified for the full-time deputy positions as determined by the interviewing board as a presumably legitimate, nondiscriminatory reason for not rehiring the plaintiffs. Thus, our task in this de novo review is to determine whether the record contains sufficient evidence for a reasonable jury to determine that Sabine County's stated reason for not rehiring the plaintiffs was pretext for discrimination.[11]

The record supports the jury's determination that Sabine County's reason for not rehiring the plaintiffs was pretext for discrimination. During trial, Vaughn and Holman testified that they were required to interview before an interview board as a precondition for being rehired as deputies for the Sabine County Sheriff's Department. Vaughn and Holman explained that after the interview process, Sabine County sent out letters telling them they were not selected for re-employment. The plaintiffs maintained that the letters they received were different from the letters sent to men who applied for deputy positions.

Although Sheriff Maddox maintained during the EEOC investigation of the plaintiffs' EEOC charge that he sent the same letter to all rejected applicants, the evidence at trial showed the letters sent to Holman and Vaughn were different from the letters sent to male applicants. The letters sent to male

---

[11]*See Rutherford*, 197 F.3d at 180-81.

applicants whom Sabine County did not hire invited them to join a reserve program from which Sabine County would select additional deputies as the need arose. The letters sent to the plaintiffs did not contain an invitation to join the reserve program.[12] Sheriff Maddox testified during trial that the difference in the letters was merely an oversight.

In addition to the rejection letters, other evidence presented at trial placed Sabine County's stated reason for not rehiring the plaintiffs into question. The evidence showed that Sabine County used the interview board process only one time—when it did not rehire Vaughn and Holman. Sheriff Maddox explained that he composed his interview board primarily from citizens untrained about what makes a competent police officer. Since that time, Sabine County hired a male from the reserve program which Vaughn and Holman were not invited to join. That applicant's previous interview board score was lower than Holman's score.

Sabine County's previous Sheriff testified that he believed the plaintiffs are more qualified than some of the individuals Sheriff Maddox actually hired. Deputy Sheriff Wayne Davison testified that the interview board seemed to fail to recognize qualities important to competent deputies as the board ranked him 4 out of a possible score of 5 despite his 27 years of

_____

[12]The plaintiffs introduced the actual letters they received from Sheriff Maddox.

experience.  Lastly, the Chief Deputy testified that he turned down another job offer prior to appearing before Sabine County's interview board and felt pretty comfortable that he would be Chief Deputy before the board even convened.

This testimony and the rejection letters constitute circumstantial evidence of pretext.  Viewing this evidence favorably to the verdict, reasonable and fair-minded jurors could conclude that Sabine County's stated reason for not rehiring the plaintiffs was pretext for discrimination.  As a result, the district court did not err by denying Sabine County's motions for judgment as a matter of law or its motion for new trial.

## Mitigation and Back Pay

As its second issue, Sabine County asserts the district court erred by entering judgment for the jury's award of back pay because the plaintiffs failed to mitigate their damages. Under Title VII, a plaintiff may receive back pay as long as she uses reasonable diligence in finding substantially equivalent employment.[13]  Whether the plaintiff has mitigated her damages is a question of fact subject to review for clear error; the employer has the burden to prove failure to mitigate.[14]

---

[13]*See Ford Motor Co. v. EEOC*, 458 U.S. 219, 231 (1982) (explaining the relationship of 42 U.S.C. § 2000e-5(g) with common law duty to minimize damages).

[14]*See Sellers v. Delgado College (Sellers II)*, 902 F.2d 1189, 1193 (5th Cir. 1990).

Although a Title VII claimant has a duty to mitigate her damages, she has no obligation to accept employment that is not substantially equivalent to her prior employment in order to minimize damages.[15]  "'Substantially equivalent employment' for purposes of Title VII litigation is that 'employment' which affords virtually identical promotional opportunities, compensation, job responsibilities, working conditions, and status as the position from which the Title VII claimant has been discriminatorily terminated."[16]  A court evaluates the reasonableness of a Title VII claimant's diligence in light of the individual characteristics of the claimant and the job market.[17]

In the instant case, the evidence supports the district court's determination that Vaughn and Holman mitigated their damages.  The evidence demonstrated that Sabine County is a small rural community with very few law enforcement, or other government, employment opportunities.  Both plaintiffs testified they applied for and sought other employment.  Holman testified that she inquired about and applied for jobs at the City of Hemphill.  Holman also explained that she worked at a doughnut shop that Vaughn opened after she was not rehired, a fast food

---

[15]*See Ford Motor Co.*, 458 U.S. at 231.

[16]*Sellers v. Delgado Cmty. College*, 839 F.2d 1132, 1138 (5th Cir. 1988).

[17]*See Sellers II*, 902 F.2d at 1193.

establishment, a legal office, a school doing substitute cleaning, and a car wash. Holman testified that at the time of trial she was doing contract work for STARCON International in Illinois. These jobs are not the same type of work as her work as a deputy sheriff, but these jobs reflect Holman's attempts to earn a living where she was unable to obtain another law enforcement position.

Vaughn testified that she applied for a job in the Hemphill school district, but could not apply for jobs that were far from home due to her husband's failing health. Instead, she explained that she opened and operated a doughnut shop. When this venture failed, she began to study to become a real estate agent. Although not the same type of work as her work as a deputy sheriff, these efforts reflect Vaughn's attempts to earn a living where she was precluded from obtaining another law enforcement position.

By seeking and accepting the best employment they could find, even though law enforcement opportunities were not available, the plaintiffs mitigated their damages. Because evidence in the record supports the district court's determination that the plaintiffs mitigated their damages, the district court did not clearly err by entering judgment for back pay.

## The Amount of Back Pay

In its third issue, Sabine County maintains the district court erred by failing to reduce the jury's award of back pay. We review the district court's order awarding back pay for abuse of discretion.[18] Although the district court should defer to the jury's findings, the court abuses its discretion when it enters judgment on a verdict unsupported by evidence.[19] We examine each plaintiff's back pay award separately.

Vaughn testified that she earned $1991.40 per month as a deputy sheriff. At the time of trial, 25 months had passed since Vaughn and Holman were not rehired. Based on a monthly salary of $1991.40, Vaughn's maximum earning capacity during the 25-month back pay period was $49,785.00. The jury, however, awarded Vaughn $61,000.00, which was $11,215.00 more than Vaughn's maximum earning capacity. A jury may consider the value of employee benefits in awarding back pay,[20] but no evidence in the record supports the $11,215.00 increase in Vaughn's maximum earning capacity. Although Vaughn testified that she lost $14,000.00 in her efforts to open and operate a doughnut shop,

---

[18]*See Giles v. Gen. Elec. Co.*, 245 F.3d 474, 492 (5th Cir. 2001).

[19]*See Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 660 (5th Cir. 2002).

[20]*See Purcell v. Seguin State Bank & Trust Co.*, 999 F.2d 950 (5th Cir. 1993) (declining to automatically grant back pay based on insurance benefits, but acknowledging they may be recoverable where plaintiff shows damage).

these damages are not appropriate for back pay.[21]  Thus, the district court abused its discretion by failing to reduce Vaughn's award.

Holman testified she earned $2,041.40 per month as a deputy. Thus, her maximum earning capacity during the 25-month period was $51,035.00.  Holman also testified that she earned $15,541.00 in 2001 by working several different jobs.  The district court must reduce an award for back pay by a plaintiff's interim earnings such as Holman's earnings in 2001.[22]  Reducing Holman's maximum earning capacity by her earnings supports an award of $35,494.00. The jury, however, awarded her $42,000.00, which was $6,506.00 more than her maximum earning capacity reduced by her 2001 earnings.  Holman was less sure about how much money she earned during 2002; her award, however, already exceeds any limit supported by evidence in the record.  As a result, the district court abused its discretion by failing to reduce Holman's award.

## Front Pay

The district court awarded each plaintiff 11 months of front pay based on the number of months remaining in Sheriff Maddox's term.  The district court first computed the amount each plaintiff could have earned during the 11-month period had she

---

[21]*See Floca v. Homcare Health Servs.*, 845 F.2d 108, 113 (5th Cir. 1988)(district court properly disallowed front pay, as a double benefit, when plaintiff chose to go to school).

[22]*See* 42 U.S.C. § 2000e-5(g)(1).

been rehired. The court then reduced each resulting maximum earning capacity by an amount equal to Holman's projected earnings at STARCON.

On appeal, Sabine County challenges the district court's award of front pay. Sabine County maintains that the plaintiffs should be precluded from any award of front pay because they failed to mitigate their damages. Additionally, Sabine County argues that an award of front pay is improper because the plaintiffs' earning capacities are currently greater than they were as employees of Sabine County.

We review the district court's award of front pay for abuse of discretion.[23] When reinstatement is not a viable option, the district court, in its discretion, may order front pay in lieu of reinstatement into a hostile work environment.[24] The parties to this lawsuit do not dispute the district court's determination that reinstatement is not a viable option. Where reinstatement is not an option, a plaintiff must use reasonable diligence to find substantially equivalent employment to justify awarding front pay.[25] As with back pay, a plaintiff's right to receive front pay is subject to her duty to mitigate damages.[26] Having

_____

[23] *See Giles*, 245 F.3d at 489.

[24] *See Pollard v. E.I. Du Pont De Nemours & Co.*, 532 U.S. 843, 846 (2001).

[25] *See id.*

[26] *See Sellers II*, 902 F.2d at 1196.

12

already determined the evidence supports the jury's determination that Vaughn and Holman mitigated their damages, we consider only whether the amount of the awards are proper.

Sabine County complains that the district court offset the awards of front pay by $706.00 per month rather than by $706 per week. The record supports this argument. Although the district court used $706.00 per month in calculating Holman's projected earnings at STARCON, Holman testified during trial that she earned about $700.00 per week at STARCON. Based on $700 per week, Holman could potentially earn $2,800.00 per month. Although this potential is more than either plaintiff earned as a deputy sheriff for Sabine County, an award of front pay is not necessarily precluded. "Calculations of front pay cannot be totally accurate because they are prospective and necessarily speculative in nature."[27] In this case, the ability to earn $706.00 a week is based on the availability of periodic contract work involving travel to other states. The evidence indicates that Vaughn cannot travel far from home because of her husband's health. We need not comment on this matter further, however, since it is clear the district court erred in calculating its award because the award was not based on evidence in the record. As a result, the district court erred in the award of front pay.

_____

[27]*Reneau v. Wayne Griffin & Sons, Inc*., 945 F.2d 869, 870 (5th Cir. 1991); *see Julian v. City of Houston*, 314 F.3d 721, 729 (5th Cir. 2002).

13

## Compensatory Mental Anguish Damages

Sabine County asserts that the plaintiffs' evidence does not support their awards for mental anguish and that the awards are excessive. We review an award for mental anguish damages for abuse of discretion.[28] Evidence of mental anguish need not be corroborated by doctors, psychologists, or other witnesses,[29] but the plaintiff must support her claims with competent evidence regarding the "nature, extent, and duration" of the harm.[30]

In arguing that the district court's awards are excessive, Sabine County isolates brief statements the plaintiffs made regarding their damages and asks us to ignore testimony detailing why the plaintiffs were anxious, suffered from sleep loss, and endured humiliation. During trial, the plaintiffs testified as to the nature, extent, and duration of the sleeplessness, anxiety and humiliation they experienced. They explained their humiliation by describing their loss of standing in the community, phone calls from neighbors and associates, and their minimum wage jobs for employers such as "Fat Freds." The

---

[28]*See Patterson v. PHP Healthcare Corp.*, 90 F.3d 927, 940 (5th Cir. 1996).

[29]*See Hitt v. Connell*, 301 F.3d 240, 250 (5th Cir. 2002) ("[t]he plaintiff's own testimony, standing alone, may be sufficient to prove mental damages, but only if the testimony is 'particularized and extensive' enough...") (internal citation omitted).

[30]*See Brady v. Fort Bend County*, 145 F.3d 691, 720 (5th Cir. 1998).

14

district court observed the authenticity of their emotions as they testified.

Nevertheless, Sabine County asks us to dispose of this appeal in the same manner as we did in *Brady v. Fort Bend County*,[31] and *Hitt v. Connell*.[32]  In *Brady*, this Court reviewed mental anguish damages on a motion for judgment as a matter of a law requiring de novo review.[33]  In *Hitt*, although we reviewed for abuse of discretion, we overturned the jury's verdict of $224,000.00 for embarrassment and depression because the plaintiff's statements were few and conclusory.[34]  This case is different from *Brady* because here we review the district court's award for abuse of discretion rather than de novo, and different from *Hitt* because the plaintiffs' statements were neither few nor conclusory.

Vaughn and Holman proved their damages by testifying about the anxiety, sleep loss, and humiliation they experienced from the loss of well-respected jobs in the community, losses which relegated them to minimum wage labor.  "Judgments on non-economic damages are notoriously variable; we have no basis to reverse the

---

[31]*See Brady,* 145 F.3d at 691.

[32]*See Hitt*, 310 F.3d at 250.

[33]*See Brady*, 145 F.3d at 717.

[34]*See Hitt*, 301 F.3d at 251.

15

jury's evaluation."[35]  The district court did not abuse its discretion by failing to set aside the jury's verdict.

### Exclusion of "After-Acquired Evidence"

During trial, Sabine County attempted to introduce evidence that Holman took her personnel file when she left the Sheriff's Department.  Sabine County maintains this action constituted criminal conduct.  The district court, however, excluded the evidence.  On appeal, Sabine County argues that the district court erred by excluding the evidence.  Although its argument is not clearly articulated, Sabine County apparently maintains the evidence precludes Holman from an award of front pay.

We review a district court's exclusion of evidence for abuse of discretion.[36]  We will not disturb an evidentiary ruling unless it affects a substantial right of the complaining party.[37]  "Where an employer seeks to rely upon after-acquired evidence of wrongdoing, it must first establish that the wrongdoing was of such severity that the employee in fact would have been terminated on those grounds alone if the employer had known of it

---

[35]*Forsyth v. City of Dallas, Tex.*, 91 F.3d 769, 774 (5th Cir. 1996).

[36]*See Guillory v. Domtar Indus.*, 95 F.3d 1320, 1329 (5th Cir. 1996) (citing *Mac Sales, Inc., v. E.I. du Pont de Nemours & Co.*, 24 F.3d 747, 753 (5th Cir. 1994)).

[37]*See id.* (citing *Polythane Sys. Inc. v. Marina Ventures Int'l Ltd.*, 993 F.2d 1201, 1208 (5th Cir. 1993).

16

at the time of the discharge."[38]

The after-acquired evidence theory has no bearing on this case.  Holman's action occurred after Sabine County decided not to offer her employment.  Logically, Sabine County could not have known of Holman's actions at the time she was not rehired because those actions had not yet occurred.[39]  Because the decision had already been made to not hire Holman before she purportedly took the file, Sabine County could not establish that any wrongdoing was of such severity that the wrongdoing alone would have resulted in Holman's termination.  As a result, the district court did not err by excluding the evidence of the allegedly illegal conduct.

### Attorney's Fees

Finally, Sabine County argues that the district court's award of attorney's fees is excessive in light of the district court's errors.  We review the award of attorney's fees for abuse of discretion.[40]  The calculation of attorney's fees involves two steps.  First, the court calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case

---

[38]*Smith v. Berry Co.*, 165 F.3d 390, 395 (5th Cir. 1999) (citing *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 362-363 (1995)).

[39]*See id*.

[40]*Hopwood v. Texas*, 236 F.3d 256, 277 (5th Cir. 2000).

17

by the reasonable hourly rates for the participating lawyers.[41]

The court then considers the following factors in determining whether the lodestar figure should be adjusted upward or downward:

    (1) the time and labor required for the litigation;
    (2) the novelty and difficulty of the questions presented;
    (3) the skill required to perform the legal services properly;
    (4) the preclusion of other employment by the attorney due to acceptance of the case;
    (5) the customary fee;
    (6) whether the fee is fixed or contingent;
    (7) time limitations imposed by the client or the circumstances;
    (8) the amount involved and the result obtained;
    (9) the experience, reputation and ability of the attorneys;
    (10) the "undesirability" of the case;
    (11) the nature and length of the professional relationship with the client; and
    (12) awards in similar cases.[42]

The district court has broad discretion in awarding attorney's fees, and an award of fees should not result in further significant litigation.[43]

    In this case, the district court's detailed order clearly indicates the court considered the lodestar fee, the number of hours required to prosecute the plaintiffs' case, and the factors discussed above.  Although the "amount [of damage] involved, and

---

[41]See *Migis v. Pearle Vision, Inc.*, 135 F.3d 1041, 1047 (5th Cir. 1998).

[42]See *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) (emphasis added).

[43]See *Hopwood*, 236 F.3d at 277.

the result obtained," may affect attorney's fees,[44] Sabine County advances no argument about why the awards are excessive other than arguing that the plaintiff must be the prevailing party in order to obtain an award.[45]  After our review, the plaintiffs remain prevailing parties.  Hence, the district court did not abuse its discretion in awarding attorney's fees.

## Conclusion

Because insufficient evidence exists to support the district court's award of back pay, we REVERSE the district court's award of back pay and REMAND the case for recalculation of the amount of back pay.  Because the district court erred in its calculation of front pay, we REVERSE the district court's award of front pay and REMAND the case for recalculation of front pay.  We AFFIRM the district court's judgment in all other respects.

AFFIRMED IN PART; REVERSED AND REMANDED IN PART.

---

[44]*See Johnson*, 488 F.2d at 718-19.

[45]*See Farrar v. Hobby*, 506 U.S. 103, 108-09 (1992).