United States Court of Appeals
Fifth Circuit

**F I L E D**

June 16, 2005

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT**

———————

No. 04-40569

———————

BRANDON L BRYANT,

                                    Plaintiff-Appellee-Cross-Appellant,

versus

COMPASS GROUP USA INC, individually, doing business as
Chartwells,

                                    Defendant-Appellant-Cross-Appellee.

———————

Appeal from the United States District Court
For the Eastern District of Texas

———————

Before REAVLEY, JONES, and GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Compass Group USA Inc., individually, doing business as Chartwells ("Chartwells"), appeals

the jury verdict in favor of Brandon Bryant ("Bryant") for unlawful termination under Title VII of

the Civil Rights Act of 1964. 42 U.S.C. § 2000e, *et seq*. Chartwells challenges the jury's finding

that it terminated Bryant either because of his race or because he had filed an Equal Employment

Opportunity Commission ("EEOC") charge of discrimination.

Chartwells employed Bryant, a white male, as a cook at their Lamar University food services operation. Chartwells provides food and beverage services to educational facilities as an independent contractor.

Bryant sought promotion at Chartwells to an open executive chef position, which was ultimately filled by Ricardo Saldana, an Hispanic employee. One month later, Chartwells transferred Francelia Madrigal, Saldana's sister-in-law, to its Lamar operation. Bryant filed a discrimination charge with the EEOC on March 26, 2002, alleging reverse race discrimination. Specifically, he claimed that Chartwells subjected him to disparate terms and conditions of employment)) including by Saldana and Madrigal)) and that Chartwells' management denied him a promotion to the executive chef position because of his race.

Ten days later, on April 6, 2002, Bryant, Madrigal, and Saldana worked at a bat mitzvah at a recreational area on the Lamar Campus. After the event, Madrigal informed Saldana that she had observed Bryant take an envelope from the gift table and suspected that he had disposed of the envelope in the trash behind the dining hall. Madrigal claims she looked for the envelope, but it was too dark to see anything, so she returned the following day and found three envelopes and three checks in the trash. She informed Saldana about the checks and provided a statement to Max Mitchell, the food services director for Chartwells at Lamar. Maria Ortiz, another Chartwells employee who worked at the bat mitzvah the night before, gave a statement to Lamar University police officer Daniel Bowden.

Bryant was asked to speak with Bowden the following day when he arrived at work. Bryant agreed to pay back the $26 that he claimed represented the missing cash from the envelopes but he

included a note to the girl's mother stating that he was paying the money under duress and that he maintained his innocence. Bowden informed Chartwells that Bryant confessed to taking the money and agreed to make restitution. Chartwells terminated Bryant's employment, claiming the termination was based on the police officer's statement that Bryant confessed to the theft.

Bryant filed suit asserting that Chartwells racially discriminated against him by subjecting him to adverse terms and conditions of employment, denying him a promotion to executive chef, and terminating his employment. Bryant further claimed that Chartwells unlawfully retaliated against him for filing a discrimination charge with the EEOC by terminating his employment.[1]

The district court submitted Bryant's claims of unlawful reduction in work hours, denial of promotion, and termination of employment claims to the jury.[2] The jury found: (1) for Bryant on the termination claim; (2) for Chartwells on the promotion claim; and (3) for Bryant on the unlawful discrimination in the reduction in hours claim, but that Chartwells would have reduced Bryant's hours regardless of the unlawful motivation. The jury awarded Bryant: (1) $42,500 in actual damages; (2) $160,000 in compensatory damages; and (3) $350,000 in punitive damages. In addition, the court awarded Bryant $36,500 in attorneys' fees and $3,093.16 in costs. The district court granted Chartwells' motion for judgment as a matter of law ("JMOL") on punitive damages and granted a remittitur on the compensatory damage award to $150,000 and actual damages to $32,556.22. Bryant accepted the remittitur.

---

[1] Bryant also claimed that Chartwells defamed him to the president of Lamar University, but abandoned this claim before the beginning of trial.

[2] The court granted Chartwells' motion for JMOL as to certain claims of discriminatory terms and conditions of employment at the close of Bryant's evidence and several other claims of disparate terms and conditions of employment at the close of Chartwells' evidence.

II

Title VII prohibits an employer from "discharg[ing] an individual, or otherwise discriminat[ing] against any individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits retaliation by employers against employees who have filed a charge of discrimination. 42 U.S.C. § 2000e-3(a). The jury affirmatively answered a single question asking them to determine whether Bryant's race or retaliation for his filing of an EEOC charge of discrimination was a substantial or motivating factor in his termination. Chartwells appeals the judgment in favor of Bryant, arguing the district court's denial of its motion for JMOL should be reversed.

We review a district court's denial of a motion for JMOL *de novo*. *Thomas v. Tex. Dep't of Criminal Justice*, 220 F.3d 389, 392 (5th Cir. 2000). A motion for JMOL should be granted if "there is no legally sufficient evidentiary basis for a reasonable jury to find for a party." FED. R. CIV. P. 50(a). Thus, "if reasonable persons could differ in their interpretations of the evidence, then the motion should be denied." *Thomas*, 220 F.3d at 392 (citing *Baltazor v. Holmes*, 162 F.3d 368, 373 (5th Cir. 1998)). "A post-judgment motion for judgment as a matter of law should only be granted when 'the facts and inferences point so strongly in favor of the movant that a rational jury could not reach a contrary verdict.'" *Id.* (quoting *Waymire v. Harris County, Tex.*, 86 F.3d 424, 427 (5th Cir. 1996)). The jury's verdict is afforded great deference. Thus, when evaluating the sufficiency of the evidence, we view all evidence and draw all reasonable inferences in the light most favorable to the verdict. *Id.*

Chartwells argues that the district court erred in failing to grant its JMOL motion on Bryant's unlawful termination claim because there was insufficient evidence for a reasonable jury to find that

Bryant's race or his EEOC claim was a motivating factor it its decision to terminate his employment. Chartwells raises three arguments: (1) Bryant failed to establish a *prima facie* case of unlawful termination; (2) Bryant did not offer sufficient evidence to establish that Chartwells' reason for termination was a pretext for discrimination or if true, was only one of the reasons for its conduct, and another "motivating factor" was the plaintiff's race or retaliation for his filing of an EEOC claim; and (3) Chartwells offered sufficient evidence that it would have made the same adverse employment decision regardless of any unlawful animus.

"[W]hen, as here, a case has been fully tried on its merits, we do not focus on the *McDonnell Douglas*[3] burden-shifting scheme. Instead, we inquire whether the record contains sufficient evidence to support the jury's ultimate findings." *Smith v. Berry Co.*, 165 F.3d 390, 394 (5th Cir. 1999) (footnoted added). *See also Rutherford v. Harris County*, 197 F.3d 173, 180-81 (5th Cir. 1999); *Vaughn v. Sabine County*, 104 Fed.Appx. 980, 982 (5th Cir. 2004). "We need not parse the evidence into discrete segments corresponding to a prima facie case, an articulation of a legitimate, nondiscriminatory reason for the employer's decision, and a showing of pretext. 'When a case has been fully tried on the merits, the adequacy of a party's showing at any particular stage of the *McDonnell Douglas* ritual is unimportant.'" *Vaughn*, 104 Fed.Appx. at 982 (quoting *Travis v. Bd. of Regents of Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997)). Therefore, under a *de novo* review, this court must determine whether the record contains sufficient evidence for a reasonable jury to determine that Chartwells' stated reason for terminating Bryant was pretext or that while true,

---

[3] The *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792 (1973), framework requires a plaintiff to first create a presumption of discrimination by making out a *prima facie* case of discrimination. The burden of production then shifts to the defendant to establish legitimate non-discriminatory reasons for its actions. The plaintiff then bears the burden of persuading the trier of fact by a preponderance of the evidence that the employer intentionally discriminated against the plaintiff because of the plaintiff's protected status. *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003).

it was only one of the reasons for its conduct, and another "motivating factor" was the plaintiff's race or retaliation for his filing of an EEOC claim.

Chartwells asserts that it terminated Bryant's employment for a legitimate, non-discriminatory reason) ) namely that he was suspected of committing theft or that he committed theft. Chartwells claims that it maintained a policy, as stated in its General Rules and Provisions, that provided for immediate termination for "theft, reasonable suspicion of theft or accessory to theft." Bryant argues that Chartwells' reason is mere pretext for its actual motive for terminating his employment) ) namely that he had filed an EEOC charge alleging reverse race discrimination only three weeks prior to the events that resulted in his termination. "[T]he factfinder's rejection of the employer's legitimate, nondiscriminatory reason for its action does not *compel* judgment for the plaintiff . . . [although] it is *permissible* for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Products Inc.*, 530 U.S. 133, 146-47 (2000) (emphasis in original).

Bryant relies heavily on the close proximity of time between the events to demonstrate that Chartwells' reason for his termination was pretextual. In addition, Bryant claims that management's decision to have Saldana memorialize Bryant's past transgressions also demonstrates that its true reason for terminating him was retaliation for his filing of the EEOC claim. There is no evidence, however, that this memorandum or Bryant's alleged past transgressions was the basis for his termination.

Bryant's remaining arguments focus on his innocence and that his confession came under

duress. The critical issue is not what Bryant told the officer[4] and under what circumstances Bryant confessed, but what the officer relayed to Chartwells' management and what reasons Chartwells relied on in terminating Bryant. Of primary importance on this issue is the uncontroverted testimony of a disinterested third party, officer Bowden. The record indicates that he informed Chartwells management that Bryant confessed to the theft.[5] Bryant offers no evidence to demonstrate why Chartwells' explanation that it relied on this evidence for termination is pretext. Therefore, there is no legally sufficient evidentiary basis for a reasonable jury to find that Chartwells unlawfully terminated Bryant in retaliation for filing an EEOC charge of discrimination.

Bryant also asserted several theories to demonstrate that Chartwells' true "motivating factor" behind its decision was Bryant's race. First, Bryant argues that there was a conspiracy between the Hispanic employees))Saldana, Madrigal, and Ortiz))to get him fired and that management knew, or should have known, about this framing. Bryant concedes that none of these individuals were official decisionmakers at Chartwells and that none of them had authority to terminate his employment. However, "[i]f an employee can demonstrate that others had influence or leverage over the official decisionmaker, and thus were not ordinary coworkers, it is proper to impute their discriminatory attitudes to the formal decisionmaker . . . . 'If the [formal decisionmakers] acted as

---

[4] Bowden testified at trial that Bryant never directly admitted to him that he took the cards or money:
Q: Lt. Bowden, I thought you told me that Mr. Bryant didn't admit to taking the money?
A: The words "I did it," no, you're right, he never said that.

[5] Q: What did you tell Mr. Mitchell?
A: I told Mr. Mitchell that Brandon agreed to pay back the money.
Q: What else did you tell Mr. Mitchell?
A: Well, I don't remember exactly what it was, but it did - - I'm sure I told him that he admitted to doing it and that he would pay the money back.
Q: Right. And you did tell Mr. Mitchell that he confessed to taking the money, didn't you?
A: Yes.

the conduit of [the employee's] prejudice)) his cat's paw)) the innocence of the [decisionmakers] would not spare the company from liability.'" *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 226-27 (5th Cir. 2000) (citing *Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990)). Bryant's "cat's paw" theory is that Saldana, Madrigal, and Ortiz had unlawful racially motivated intent and that, because the decisionmakers relied on tainted information from these employees, the termination decision itself was tainted.

Bryant offered little evidence at trial to demonstrate a conspiracy. He claims that: (1) Saldana and Madrigal showed up at the bat mitzvah despite not being scheduled to work; (2) Bryant did not see Saldana although she claimed to have seen him take the card from the gift table; (3) Madrigal did not immediately report the theft; (4) Ortiz's son reported seeing Bryant empty the cards into the trash behind the dumpster but did not see him take the cards from the table; and (5) Madrigal claims to have found the cards in the trash, but proceeded to work the rest of the day. Even if we assume that the three Hispanic co-workers were conspiring against Bryant, he offers no evidence to demonstrate that the conspiracy was racially motivated. Similarly, Bryant does not argue that the three Hispanic employees were motivated by retaliatory intent because none of them knew that he had filed an EEOC claim. Again, he simply relies on the fact that the other employees are Hispanic and he is white.

Furthermore, Bryant's conspiracy theory fails because he offered no evidence that the official decisionmakers were involved in the conspiracy, knew about the conspiracy, or should have known about the conspiracy. Testimony at trial indicated that Chartwells relied on the police officer's report that Bryant admitted to the theft, as discussed above, in making its decision. In fact, it is Bryant who alleges that Chartwells' management failed to properly investigate the events surrounding the bat

mitzvah that would have revealed this potential conspiracy. While the prudent action may have been to discuss the event with Bryant and obtain his side of the story before terminating him, evidence that the employer's investigation merely came to an incorrect conclusion does not establish a racial motivation behind an adverse employment decision. Management does not have to make proper decisions, only non-discriminatory ones. *See Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991) ("even an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination). Employment discrimination laws are "not intended to be a vehicle for judicial second-guessing of business decisions, nor . . . to transform the courts into personnel managers." *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507-08 (5th Cir. 1988).

Bryant also argues that Chartwells' reason for terminating his employment was pretextual because similar conduct on the part of an Hispanic employee, Ortiz, was not disciplined in the same manner. Disparate treatment of similarly situated employees is one way to demonstrate unlawful discrimination and retaliation. *See Smith v. Wal-Mart Stores*, 891 F.2d 1177, 1180 (5th Cir. 1990). To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals. *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995). To establish disparate treatment, Bryant must show that Chartwells gave preferential treatment to another employee under "nearly identical" circumstances. *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514 (5th Cir. 2001).

The district court concluded, in denying Chartwells' JMOL, that Bryant established disparate treatment since he and Ortiz were similarly situated employees in the minds of the jury, both being "among the low level hourly employees." The district court stated that

-9-

There was evidence that Max Mitchell, [Chartwells'] food director at Lamar at the time, and one of the three individuals who made the decision to fire Bryant, had been aware that Ms. Ortiz, a Hispanic, had pilfered food, alcoholic beverages, and/or table decorations. No action was taken, and [Chartwells] presented no credible evidence that Ms. Ortiz did not do these things, that any disciplinary action was administered, or that there was good reason for not administering disciplinary action. On the other hand, Bryant, who in [Chartwells'] view, was a similar, low level, hourly employee, but a Caucasian, was fired.

A reasonable jury could conclude that Bryant and Ortiz were "similarly situated" low level hourly employees. However, the alleged theft of alcohol, party decorations, and table decorations is not the same as stealing money from a client's gift table at a catered event. The allegations leveled against Ortiz involved an internal situation compared to the allegations of theft from a client in Bryant's situation. A key distinction is that the latter can result in a significant loss of business and clients for Chartwells due to the devastating effect such actions would have on its reputation as well as exposing it to civil legal liability. Moreover, since Ortiz never admitted the theft to the police or anyone else, no reasonable jury could conclude that the two events are "nearly identical."

Bryant also argues that he was subject to disparate treatment because Chartwells did not terminate Ortiz's employment after they learned she was not authorized to work in the United States. However, when Chartwells learned that Ortiz's Social Security information was invalid, they gave her forty-eight hours to provide the proper information, as company policy dictated, and when she was unable to do so, she was discharged. Again, this fails to demonstrate disparate treatment.

The record does not contain evidence sufficient to support the jury's ultimate findings. Therefore, the district court improperly denied Chartwells' motion for JMOL and the judgment should be vacated.

III

Since Bryant failed to elicit evidence at trial so that a reasonable jury could conclude that his

race or retaliation for his filing of an EEOC claim was a substantial or motivating factor in his termination, we REVERSE the district court judgment and RENDER take nothing judgment against Bryant.[6]

---

[6] Because we reverse the judgment for Bryant, we need not consider his claim that the elimination of the jury awarded punitive damages based on his acceptance of a remittitur of actual damages was improper. It is also unnecessary to consider Chartwells' appeal of the compensatory damages, actual damages, and attorneys' fees and costs awarded Bryant.