# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
January 11, 2010

No. 09-50466
Summary Calendar

Charles R. Fulbruge III
Clerk

LOUISE MOORE,

Plaintiff - Appellant

v.

REEVES COUNTY; REEVES COUNTY JUVENILE BOARD,

Defendants - Appellees

Appeal from the United States District Court
for the Western District of Texas
USDC No. 4:08-CV-27

Before KING, DAVIS, and HAYNES, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Louise Moore, an African-American woman, appeals the district court's grant of summary judgment in favor of Reeves County and the Reeves County Juvenile Board on her Title VII, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981 sex and race discrimination claims. Moore alleges that she was terminated from her position as the chief juvenile probation officer in the Reeves/Loving County Juvenile Probation Department on account of her race

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

and gender. On appeal, Moore only presses her race discrimination claims and argues that the trial court erred in holding that: (1) Reeves County was not Moore's employer; (2) Moore was not an employee under Title VII; and (3) Moore did not raise any fact issue regarding whether the Reeves County Juvenile Board's reason for terminating her was pretextual. For the following reasons, we AFFIRM the judgment of the district court.

## BACKGROUND

Louise Moore was the chief juvenile probation officer in the Reeves/Loving County Juvenile Probation Department (the "Department"). She was appointed to her position by the Reeves/Loving County Juvenile Probation Board (the "Board"). In her role, Moore directed and supervised the juvenile services program. The Board holds the ultimate responsibility of supervising and managing the Department, including decisions about whether to terminate employees.

In late 2005, a dispute arose between Moore and a subordinate juvenile probation officer, Mary Ann Acosta. In December 2005, Moore prepared a critical evaluation of Acosta that prevented Acosta from receiving her maximum compensation under the Department's new incentive pay program. In response, Acosta filed a formal grievance with the Board. In January 2006, the Board heard Acosta's grievance. However, instead of taking formal action on the grievance, a member of the Board agreed to meet personally with Moore and Acosta on a regular basis in an effort to resolve the conflicts between Moore and Acosta and improve the performance of the Department. Moore and Acosta both agreed with this plan.

However, in July 2006, Acosta notified Moore that she intended to submit another grievance to the Board. In response, Moore discharged Acosta for "insubordination." Acosta appealed Moore's decision to the Board, and the Board reversed the discharge and reinstated Acosta at a meeting on August 8, 2006.

2

At an "emergency meeting" on August 18, 2006, the Board hired a consultant, Nancy Baird, to evaluate the Department's problems and make findings and recommendations to the Board. The Board informed employees, including Moore, about the steps it was taking to resolve the problems within the Department.

After reviewing the Department in August 2006, Baird presented findings and recommendations which the Board adopted at its meeting on September 1, 2006. These recommendations included specific actions that Moore and Acosta should take to improve communications and resolve conflict. Specifically, Baird recommended that Moore attend management training; prepare a plan of action to improve communication in the Department; and meet individually with the Department staff to review their professional development plans. Baird also recommended that Acosta develop a plan of action to improve communication with Moore. To follow-up on these recommendations, Baird was to complete a subsequent evaluation and report for the board forty-five days later.

After conducting her follow-up evaluation, Baird presented her findings and recommendations to the Board on October 20, 2006. In her November 5, 2006, written report detailing these findings, Baird noted that Moore had not followed several of her recommendations. Specifically, Baird determined that Moore had attended some training sessions, but she had not attended appropriate training; Moore had developed an insufficient plan of action to improve Department communications because the plan did not include specifics, measurable goals, or timelines; Moore had neither delivered professional development plans to all Department staff as recommended nor reviewed professional development plans individually with all Department staff; and Moore had not met with Acosta to discuss Acosta's professional development plan. Further, Baird found that Acosta had complied with her recommendations because she had developed a detailed plan of action, which she provided to Baird.

3

Based on these findings, the Board voted to terminate Moore at its October 20, 2006, meeting.

Moore properly exhausted administrative remedies, received her right to sue letter, and filed suit in federal court on July 17, 2008, alleging race and sex discrimination under Title VII and § 1981.  The Board and Reeves County filed their motion for summary judgment in March 2009.  The district court granted summary judgment in favor of the Board and Reeves County on April 30, 2009, and entered final judgment in favor of the defendants the same day.  Moore now appeals the grant of summary judgment on her race discrimination claims.

## DISCUSSION

### A.  Standard of Review and Title VII, § 1981 Framework

"We review a district court's grant of summary judgment *de novo*, applying the same standards as the district court."  *Pegram v. Honeywell, Inc.*, 361 F.3d 272, 278 (5th Cir. 2004).  Summary judgment is appropriate where the record shows that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c); *Pegram*, 361 F.3d at 278.  "A dispute about a material fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Davis v. Dallas Area Rapid Transit*, 383 F.3d 309, 316 (5th Cir. 2004) (quotation marks omitted).  The summary judgment test for discrimination claims under § 1981 is the same as the test for discrimination claims under Title VII.  *Id.*

Since Moore does not allege any direct evidence of discrimination, we apply the familiar *McDonnell Douglas* burden-shifting analysis.  *Id.* (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  "To survive summary judgment under *McDonnell Douglas*, the plaintiff must first present evidence of a prima facie case of discrimination."  *Id.* at 317.  If the plaintiff presents a prima facie case of discrimination, then an inference of discrimination arises, and the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason

for the underlying employment action. *Id.* "If the employer is able to state a legitimate rationale for its employment action, the inference of discrimination disappears and the plaintiff must present evidence that the employer's proffered reason was mere pretext for racial discrimination." *Id.*

"On summary judgment, [at the pretext stage], the plaintiff must substantiate his claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Fed. Express Corp.*, 283 F.3d 715, 720 (5th Cir. 2002). "To carry this burden, the plaintiff must produce substantial evidence indicating that the proffered legitimate nondiscriminatory reason is a pretext for discrimination." *Laxton v. Gap, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). "Evidence is substantial if it is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 579 (quotation marks omitted).

Pretext may be established "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or 'unworthy of credence.'" *Id.* at 578 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000)). "To raise an inference of discrimination, the plaintiff may compare his treatment to that of nearly identical, similarly situated individuals." *Bryant v. Compass Group USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005). However, to establish disparate treatment, a plaintiff must show that the employer gave preferential treatment to another employee under "nearly identical" circumstances. *Id.* Alternatively, "[a]n explanation is false or unworthy of credence if it is not the real reason for the adverse employment action." *Laxton*, 333 F.3d at 578. "Whether summary judgment is appropriate depends on numerous factors, including 'the strength of the plaintiffs prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be

No. 09-50466

considered.'" *Price*, 283 F.3d at 720 (quoting *Reeves*, 530 U.S. at 148–49).

### B. Moore's Race Discrimination Claims

Both parties agree that Moore has made a prima facie case of discrimination and that the Board has met its burden of offering a legitimate, nondiscriminatory reason as to why Moore was discharged. Accordingly, the question before us is whether Moore has raised a fact issue regarding whether the Board's proffered reason for Moore's termination—that Moore did not follow Baird's recommendations—was pretextual.

Moore argues that the Board's reasons for firing her were pretextual for two reasons. First, Moore contends that she received "disparate treatment" because a subordinate juvenile probation officer, Acosta, also did not comply with Baird's recommendations and was not fired. Second, Moore contends that the Board's reasons for firing her are "unworthy of credence" both because the consultant's recommendations were not finalized until after Moore was terminated and because the final written report was inaccurate.

We are not persuaded by Moore's contention that Moore was subject to disparate treatment because Acosta was not fired. At the time, Moore was the chief juvenile probation officer and Acosta was a subordinate juvenile probation officer. As such, Moore, by her own admission, is vested with different responsibilities than Acosta. Further, Baird's report, which formed the basis for the Board's decision, indicated that Acosta complied with Baird's recommendations and that Moore did not. Though Moore contends that she actually did comply with Baird's recommendations, Baird concluded otherwise and the record supports Baird's conclusion. Specifically, the record shows that the Board warned Moore that the training she proposed to attend was not appropriate; that Moore's plan of action does not list measurable goals and timelines; and that Moore did not meet individually with all employees. Additionally, Moore's statements that Acosta did not comply with Baird's

6

recommendations are conclusory and unsupported by any evidence. Accordingly, we conclude that Moore has not presented the kind of substantial evidence required to show disparate treatment of similarly situated employees in nearly identical situations such that a reasonable factfinder could conclude that the Board's reason for terminating Moore was pretextual. *Bryant*, 413 F.3d at 478.

We are also not persuaded by Moore's contention that the Board's proffered reason for terminating her was "unworthy of credence" because Baird did not finalize her report until after Moore was fired and because Baird's report contained inaccuracies. While Baird did not finalize her report until after Moore's termination, the record reflects that Baird was present at the October 20, 2006, meeting of the Board and that Baird made a presentation regarding her follow-up review of the Department. Further, Moore's contention that the report is inaccurate is not supported by the record. In her appellant brief, Moore only reiterates actions that she took after Baird's recommendations and makes conclusory statements that she complied with Baird's recommendations. However, as discussed above, the record supports Baird's determination that Moore had not complied with her recommendations. Accordingly, we conclude that Moore has failed to present the kind of substantial evidence necessary to support a reasonable factfinder's determination that the Board's nondiscriminatory reason for Moore's termination was unworthy of credence and thus pretextual. *Price*, 283 F.3d at 722.

Because Moore fails to meet her burden showing that the Board's proffered nondiscriminatory reason for terminating her was pretextual, summary judgment in favor of the Board and Reeves County on Moore's discrimination claims is appropriate. Thus, even if we assume that Moore is correct(in arguing to sustain her Title VII claim) that Reeves County is her employer or that she is an employee of the Board and Reeves County under Title VII, Moore still has not shown that the Board's proffered reason for firing her is pretextual, and as such,

Moore's discrimination claims under both Title VII and § 1981 against the Board and Reeves County fail.  Accordingly, we need not resolve Moore's two other issues on appeal—whether Reeves County was Moore's employer and whether Moore was an "employee" for Title VII purposes—to conclude that summary judgment in favor of the Board and Reeves County is appropriate here.

## CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.